UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WILLIAM LEAR,<br><br>Plaintiff,<br><br>v.<br><br>A. MANASRAH, et al.,<br><br>Defendants. | CASE No. 1:17-cv-0071-DAD-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION FOR SERVICE OF COGNIZABLE CLAIMS AND TO DISMISS ALL OTHER CLAIMS AND DEFENDANTS WITH PREJUDICE**<br><br>**(ECF No. 25)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

The Court dismissed Plaintiff's complaint and first amended complaint for failure to state a claim, but gave leave to amend. (ECF Nos. 10, 21.) Plaintiff's second amended complaint is now before the Court for screening. (ECF No. 25.)

**I.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim on which relief may be granted, or that seek monetary relief from a defendant who is immune from

such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) That a right secured by the Constitution or laws of the United States was violated; and (2) That the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff is a state inmate housed at High Desert State Prison ("HDSP") but complains of acts that occurred while he was housed at California State Prison in

Corcoran, California ("CSP-Cor"). He names CSP-Cor, Dr. Majid Rahimifar, and Dr. Yasser Mansour as Defendants. The medical defendants are named in their individual and official capacities.

Plaintiff brings claims for violations of the Eighth Amendment and the Americans with Disabilities Act ("ADA"). He seeks monetary and injunctive relief and a declaration that his rights were violated.

Plaintiff's essential allegations may be summarized as follows:

### A. Allegations against Dr. Rahimifar

On April 18, 2015, Plaintiff was seen for a herniated disc and related symptoms by Dr. Rahimifar, a private medical doctor with the Bakersfield Neuroscience and Spine Institute who contracted with the California Department of Corrections and Rehabilitation. In addition to the herniated disc, Plaintiff also suffers from a "drop foot," which he describes as a numb, floppy foot that leaves him unable to wiggle his toes or flex his foot from the ankle. During this visit, Dr. Rahimifar suggested surgery for the herniated disc, assuring Plaintiff that he'd be hospitalized for two days after the surgery.

On April 20, 2015, Dr. Rahimifar performed a laminectomy.[1] Despite Dr. Rahimifar's assurance of a two-day hospital recovery period, Plaintiff was discharged the very next day. At the time, Plaintiff was still in "excruciating pain," unable to put any pressure on his legs, unable to hold down food, and unable to stay awake due to pain and feeling unwell. At Dr. Rahimifar's direction, Plaintiff was transported back to CSP-Cor, a three-hour drive away, but was returned to a hospital the following day because he had contracted hospital-acquired pneumonia. Plaintiff finally regained the ability to walk without a walker six months later.

Plaintiff also complains about Dr. Rahimifar's post-surgical follow-up care. In July 2015, CSP-Cor did an MRI following the laminectomy. In September 2015, Plaintiff met

---

[1] A laminectomy is a surgery that creates space by removing the lamina – the back part of the vertebra that covers the spinal canal. It is also known as a decompression surgery and is intended to relieve pressure on the spinal cord or nerves. See Mayo Clinic, Laminectomy, available at http://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition/prc-20009521.

1 with Dr. Rahimifar on referral from another doctor. During this appointment, Plaintiff
2 informed Dr. Rahimifar of the results of the MRI, which Plaintiff suggests showed a
3 herniated disc. The Defendant, however, declined to accept Plaintiff's word and instead
4 said he would need to review the MRI and Plaintiff's medical records himself, neither of
5 which Plaintiff could bring due to his prisoner status. Dr. Rahimifar prescribed medication
6 for Plaintiff's stiff toes but said he would need to reschedule the appointment because he
7 did not have Plaintiff's medical file. He then allegedly made no effort to obtain either the
8 MRI results or a copy of Plaintiff's medical file following this appointment. He also did not
9 reschedule the appointment.

Dr. Rahimifar next saw Plaintiff in May 2016, again on referral from another doctor, but once more said that he could not treat Plaintiff without a copy of the July 2015 MRI or Plaintiff's medical file. Dr. Rahimifar said he would need to reschedule the appointment a second time, but then again made no effort to obtain Plaintiff's medical records. Dr. Rahimifar also abruptly discontinued Plaintiff's current medications, stating that Plaintiff did not need them.

As a result of Dr. Rahimifar's decision to discharge Plaintiff immediately following the laminectomy and then to deny adequate post-surgical care, Plaintiff suffered unnecessary pain and did not heal properly.

### B. Allegations against Dr. Mansour

Plaintiff repeatedly complained to Dr. Mansour, a medical doctor at CSP-Cor, that he was having difficulty climbing up and down bus steps when going to appointments, often falling and hurting himself. Other times, Plaintiff was forced to walk to his appointments, a 30-minute walk away with a walker or cane and with no opportunities for Plaintiff to sit and rest.

Dr. Mansour dismissed these complaints as "custody" and non-medical issues, telling Plaintiff to seek help from correctional officers. Contradictorily, this Defendant also claimed that Dr. Rahimifar should address the falls. Plaintiff claims Dr. Mansour had the authority to ensure that appropriate transportation was available to Plaintiff.

As a result of Dr. Mansour's failure to issue an accommodation chrono, Plaintiff continued to suffer multiple falls on the bus steps, exacerbating his back problems and causing pain.

### C. Allegations against CSP-Cor

Plaintiff was an ADA inmate after the laminectomy since he could not walk on his own without a walker or cane for several months. He accuses CSP-Cor of failing to address his repeated falls on bus steps, resulting in Plaintiff's inadequate access to transportation services.

## IV. Analysis

### A. Eighth Amendment

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court has explained that, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant

> injury or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain....

McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

### 1. Defendant Dr. Rahimifar

Plaintiff alleges that Dr. Rahimifar discharged Plaintiff too early following a laminectomy and failed to provide adequate post-surgical follow-up care. Plaintiff's allegations do reflect a serious medical impairment, but they do not indicate a deliberate indifference to that condition. The Court assumes to be true that the post-surgical visits were on the referral of another physician and that Dr. Rahimifar was not proactive in rescheduling appointments or ordering Plaintiff's medical file. Nonetheless, these allegations indicate, at best, mere indifference, negligence, or even medical malpractice, none of which give rise to a constitutional violation. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

The Court previously provided Plaintiff with the pleading standards for an Eighth Amendment medical indifference claim and addressed the deficiencies in his claims against Dr. Rahimifar. His allegations against this Defendant continue to suffer from the same deficiencies previously noted by the Court and state no claim for relief. No useful purpose would be served by again pointing out the standards and deficiencies and giving Plaintiff yet another opportunity to try to state a claim. Accordingly, the Court will recommend dismissal of Plaintiff's claims against Dr. Rahimifar.

### 2. Defendant Dr. Mansour

Plaintiff alleges that Dr. Mansour failed to address his mobility problems, dismissing them as "custody," non-medical issues. Plaintiff's allegations suggest that Dr. Mansour both knew that Plaintiff suffered a substantial risk of serious injury going up and

6

down the bus steps, and he had the authority to accommodate Plaintiff's disability by issuing an order for alternative modes of transportation. These allegations are sufficient to state a medical indifference claim against this Defendant. See Frost v. Agnos, 152 F.3d 1124 (9th Cir. 1998) (prison guards' failure to take basic steps to prevent a disabled inmate's falls in a shower may constitute an Eighth Amendment violation); Ahdom v. Lopez, 2015 WL 5922020 (E.D. Cal. Oct. 9, 2015) (disabled inmate stated an Eighth Amendment claim by alleging that treating physician who failed to provide lower tier chrono knew of the risk of injury to the inmate who repeatedly complained about having trouble climbing flights of stairs with cast and crutches); Anderson v. Towne, 2010 WL 455387 (E.D. Cal. Jan. 29, 2010) (disabled inmate stated an Eighth Amendment claim by alleging that prison officials knew of and failed to repair a damaged floor in the slippery shower resulting in Plaintiff's fall and injury).

Plaintiff is hereby informed, though, that "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991). But since Plaintiff is no longer housed at CSP-Cor, his request for injunctive relief must be dismissed as moot.

Thus, Plaintiff may only proceed against Dr. Mansour for money damages in his individual capacity.

**B. Americans with Disabilities Act**

Title II of the Americans with Disabilities Act (ADA) prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of

the ADA applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); Weinrich, 114 F.3d at 978.

Although Section 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997).

The Supreme Court has ruled that a prisoner may state a Title II claim based on "the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs[.]" U.S. v. Georgia, 546 U.S. 151, 157 (2006) (noting that plaintiff, a paraplegic prisoner, may be able to state a Title II claim premised, inter alia, on his allegation that he could not turn his wheelchair around in his cell).

In Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001), the Ninth Circuit stated that "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall,

at 1138 (citing Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir.1998) (footnote omitted)). The Court held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1138 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)). In order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. Id. at 1139.

### 1. Appropriate Defendant

Plaintiff cannot bring an ADA action against individual prison officials because the proper defendant in such actions is the public entity responsible for the alleged discrimination. Georgia, 546 U.S. at 153. State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Yeskey, 524 U.S. at 210; Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997).

Plaintiff also cannot bring a § 1983 action against defendants in their individual capacities based on allegedly discriminatory conduct. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Therefore, Plaintiff's disability discrimination claims under the ADA against any Defendant in his individual capacity should be dismissed with prejudice.

While Plaintiff does name Dr. Mansour in his official capacity, the proper defendant in an ADA action "usually is an organization rather than a natural person." See Applegate v. CCI, No. 1:16–cv–1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (internal quotations omitted).

Therefore, Plaintiff may proceed on his ADA claim against CSP-Cor.

### 2. Sufficiency of Allegations

Plaintiff alleges that he was an ADA inmate following the laminectomy and that

CSP-Cor failed to accommodate his disabilities with regard to transportation services. This is sufficient to state an ADA claim for injunctive relief. However, Plaintiff is presently housed at HDSP. While he suggests that his transfer back to CSP-Cor is likely since he has been housed there before and his family lives nearby, this claim is speculative. Accordingly, his request for injunctive relief is moot. See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing Preiser v. Newkirk, 422 U.S. 395, 402–03 (1975)).

Additionally, Plaintiff may not seek punitive damages against CSP-Cor since they may not be awarded under Title II of the ADA. Barnes v. Gorman, 536 U.S. 181, 189 (2002).

Plaintiff does, however, state a claim for compensatory damages under the ADA. In order to state such a claim, Plaintiff must also allege that CSP-Cor intentionally discriminated against him. Duvall, 260 F.3d at 1138. The standard for intentional discrimination is deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The first prong is satisfied if Plaintiff identifies a specific, reasonable, and necessary accommodation that the defendant failed to provide. Id. The second prong is satisfied by showing that the Defendant deliberately failed to fulfill its duty to act in response to Plaintiff's request for accommodation. Id. at 1139-40.

Liberally construing the pleading, Plaintiff filed an inmate grievance at CSP-Cor complaining that Dr. Mansour refused to accommodate his mobility issues in the context of transportation services; Plaintiff also requested an alternative mode of transportation. This grievance, however, was denied at all levels of review during the inmate appeal process. Plaintiff has thus shown that CSP-Cor was aware of Plaintiff's mobility issues, the substantial likelihood of injury without accommodation, and his request for alternative modes of transportation. CSP-Cor nonetheless failed to accommodate Plaintiff's disability. These allegations are sufficient for the purposes of this screening order to show that CSP-Cor intentionally discriminated against him in light of its failure to provide accommodations so that Plaintiff could be transported safely.

### C. Declaratory Relief

Plaintiff seeks a declaration stating that his rights were violated. However, because his claims for damages necessarily entail a determination of whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Accordingly, Plaintiff's claim for declaratory relief will be dismissed.

### V. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff be allowed to proceed against Dr. Mansour on an Eighth Amendment medical indifference claim in his individual capacity and against CSP-Cor on an ADA damages claim; and
2. All other claims and Defendants be DISMISSED; and
3. Service be initiated on Defendants Mansour and CSP-Cor.

The Court's findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: September 19, 2017   /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE